# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SOPHIA LYNN GREGG, § | |
| § | |
| § | Civil Action No. 4:21-CV-00871 |
| v. § | Judge Mazzant |
| § | |
| DAVID E. COVERT, and INTEGRITY § | |
| LOGISTICS, INC. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Strike Opinion Testimony of Eduardo Gonzalez-Toledo (Dkt. #24). Having considered the motion and relevant pleadings, the Court finds it should be **DENIED in part and GRANTED in part.**

## BACKGROUND

This is a negligence claim for personal injuries by Plaintiff Sophia Lynn Gregg ("Gregg") arising out of an accident between an 18-wheeler (tractor and trailer) operated by Defendant David E. Covert ("Covert") who was under dispatch from Defendant Integrity Logistics, Inc. ("Integrity") (Dkt. #2 ¶¶ 10–11). The accident occurred on December 11, 2018 on Interstate 30 in Sulphur Springs, Texas (Dkt. #2 ¶ 10).

On August 16, 2021, Defendants moved to strike the opinions and testimony of Dr. Gonzalez-Toledo (Dkt. #24). Dr. Toledo-Gonzalez is a neuroradiologist the Plaintiff designated to offer opinions about the application of a neuroimaging technique known as diffusion tensor imaging ("DTI"), and what the DTI revealed about Plaintiff's claim of a brain injury (Dkt. #24 ¶2). Gregg has not responded.

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally

accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendants argue that Dr. Toledo-Gonzalez's analysis in the case is flawed, his methodology is invalid, and his opinions are unreliable (Dkt. #24 ¶1). Plaintiff has not responded.[1]

"When expert testimony has been challenged, it is incumbent upon the [C]ourt to conduct a preliminary fact-finding to determine whether the expert is qualified to render the proffered opinions and whether the substance of the testimony is both reliable and relevant." *Allison v. NIBCO, Inc.*, No. 9:02-CV-172, 2003 WL 25685229, at *1 (E.D. Tex. May 21, 2003). The Court must also articulate its basis for admitting expert testimony. *See Rodriquez v. Riddell Sports Inc.*, 242 F.3d 567, 581 (5th Cir. 2001). To be reliable, and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; (4) and

---

[1] "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." E.D. Tex. Civ. R. 7(d).

3

have reliably applied the principles and methods to the facts. FED. R. EVID. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

The party offering the expert testimony has the burden of establishing by a preponderance of the evidence that the challenged testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). It is not necessary for the proponent to prove that the expert's testimony is correct, but the proponent must prove the testimony is reliable. *Id.*

### I. Gregg's Abnormalities

Plaintiff asserts Dr. Toledo-Gonzalez's opinion regarding Gregg's brain abnormalities is based on insufficient data and an unreliable methodology. Dr. Toledo-Gonzalez relied on diffusion tensor imaging ("DTI") to come to his opinions in this case. DTI is an MRI method that examines the microstructure of the white matter of the brain, allowing for the detection of microscopic pathology or abnormality of the white matter (Dkt. #24, Exhibit B 67:8–68:12). The DTI method tracks how easily water moves along the white matter in the brain (Dkt. #24, Exhibit B 67:16–22). Less restricted water movement indicates a healthy brain (Dkt. #24, Exhibit B 67:24–68:12). According to Toledo, a DTI scan of Gregg's brain revealed abnormalities (Dkt. #24, Exhibit A).

In this case, the opinions are based mainly on the observations, professional experience, and education of the expert witness. In forming his opinions, Dr. Toledo-Gonzalez reviewed the report from Gregg's neuropsychological exam and Gregg's imaging study from the DTI. A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 1990670, at *10 (W.D. Tex. May 5, 2008); *see also Pipitone*, 288 F.3d at 247 (citing

*Kumho*, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")).

Furthermore, the Court finds no issues with the reliability of Dr. Toledo-Gonzalez's methodology. DTI has been subject to peer review and publication (Dkt. #24, Exhibit A, at p. 6). Several courts have admitted DTI testimony. *See e.g. Ruppel v. Kucanin*, No. 3:08-cv-591, 2011 WL 2470621 (N.D. Ind.); *Hammar v. Sentinel Ins. Co., Ltd.*, No. 08-019984 (Fla.Cir.Ct.2010) [Doc.59–11]; *Booth v. Kit, Inc.*, No. 06-1219, 2009 WL 4544743 (D.N.M. Mar. 23, 2009). Additionally, Defendants do not even question the reliability of DTI, they merely assert that results may vary from person-to-person (Dkt. #24 ¶ 18). Dr. Toledo-Gonzalez read Gregg's DTI scan, and compared it values obtained from scientific literature, and with results from a control group of former patients, to determine whether Gregg's brain showed abnormalities (Dkt. #23, Exhibit A, at p. 2).

Defendants point to Dr. Toledo-Gonzalez's admitted failure to correct for effects of age, rule out genetic influences, or address variances in the types of scanners and software used in Gregg's DTI scan as fatal problems with Dr. Toledo-Gonzalez's methodology (Dkt. #24 ¶¶ 20–21). Defendants also have a problem with the control group data, specifically that source material has been lost and the former patients never consented to use of their results for litigation (Dkt. #24 ¶¶ 10–12). However, "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Allison*, 2003 WL 25685229, at *1 n.1 (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Here, Defendants may properly cross-examine on Dr. Toledo-Gonzalez opinions, the materials relied upon in forming these opinions, and the reliability of these opinions at trial; however, this is no reason to exclude Dr. Toledo-Gonzalez opinions on Gregg's brain abnormalities. *See Allison*, 2003 WL 25685229, at *1 n. 1.  Accordingly, the Court denies Defendants' motion to the extent it seeks to exclude evidence and testimony regarding brain abnormalities identified through DTI.

## II.     Causation of Abnormalities

Defendants contend Dr. Toledo-Gonzalez's opinions on the cause of the abnormalities in Gregg's brain are wholly unsupported by the evidence and thus should be excluded (Dkt. #24 ¶¶6). Again, Plaintiff has not responded.

The Court agrees with Defendants.  The sole basis for Dr. Toledo-Gonzalez's opinion on brain abnormalities is the DTI scan (Dkt. #23, Exhibit A).  However, Dr. Toledo-Gonzalez already admitted the DTI cannot provide any information about causation (Dkt. #24, Exhibit B 69:6–12). Dr. Toledo-Gonzalez agreed that "[w]e can't say with reasonable confidence that trauma was the cause of a potential abnormality that found on a DTI" (Dkt. #24, Exhibit B 72:4–7).  Additionally, Gregg's DTI was not ordered until about a year-and-a-half after the accident (Dkt. #24, Exhibit B 84:13–15) and Dr. Toledo-Gonzalez did nothing to rule out other causes of Gregg's brain abnormalities (Dkt. #24 Exhibit B 208:23).  This is insufficient.  *Greger v. C.R. Bard*, No, 4:19-CV-675, 2021 WL 3855474, at *7 (E.D. Tex.—Aug. 30, 2021) ("While Dr. Hurst need not rule out every possible alternative explanation for Greger's injuries, he must do more than rule out one specific alternative cause, citing only a 'review [of] her images' as grounds for his conclusion"). Thus, the Court grants Defendants' motion to the extent it seeks to exclude evidence and testimony regarding the cause of brain abnormalities identified through DTI.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Strike Opinion Testimony of Eduardo Gonzalez-Toledo (Dkt. #24) is **DENIED in part**. Dr. Toledo-Gonzalez's opinion on causation of Gregg's brain abnormalities shall be excluded.

**IT IS SO ORDERED.**

**SIGNED this 4th day of November, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE